Jay L. Pomerantz
**FENWICK & WEST LLP**
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: 650-988-8500

David W. Feder
**FENWICK & WEST LLP**
902 Broadway, Suite 14
New York, NY 10010-6035
Telephone: 212-430-2600

*Attorneys for Plaintiff*
*Lashify, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LASHIFY, INC., | Case No.: _____ |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CAPACITY LLC, CAPACITY WEST LLC, AND NOAH SANGE, | |
| Defendants. | |

Plaintiff Lashify, Inc. ("Lashify"), by its undersigned counsel, hereby brings

the following Complaint against Defendants Capacity LLC, Capacity West LLC

(collectively, "Capacity"), and Noah Sange, and hereby alleges, upon knowledge

with respect to its own acts and upon information and belief as to all other matters, as follows:

## **PRELIMINARY STATEMENT**

1.     Lashify is a luxury beauty product company that primarily sells eyelash extension products that employ patented technology developed by its founder and CEO, Sahara Lotti.  Lashify conducts the vast majority of its sales through direct-to-customer shipments of orders placed through Lashify's online store.  Since its establishment in 2018, Lashify has cultivated a sizeable and loyal customer following based on the unique style and convenience of its pioneering at-home-application eyelash technology.  Further, Lashify has differentiated itself from its many competitors and gained customers through its relentless dedication to customer service and the customer experience, as well as its constant engagement with its customers and the public on social media.  Lashify's customers have come to expect easy ordering, reliable shipping, distinctive and attractive packaging, and attentive customer service.  This is what sets Lashify apart from the competition and is the "secret sauce" that has enabled Lashify to position itself as the leading luxury direct-to-customer eyelash extension company.

2.     Prior to May 2021, Lashify exclusively handled its own fulfillment, packaging and delivery operations from Los Angeles, California.  Due to the exponential growth of its operations over the past four years, Lashify sought to

expand its capability to ship its products quickly and reliably to its expanding customer base.  For that reason, Lashify entered into a series of agreements with Capacity, a third-party logistics ("3PL") service provider, in May 2021.  Those agreements— the Master Services Agreement ("MSA"), and related Statement of Work ("SOW"), and Amendment to Third Party Warehousing and Order Fulfillment Agreement ("Amendment") (collectively, "Agreements")—called for Capacity to provide fulfillment, packaging, and delivery services for shipments to Lashify customers in certain regions within the United States, Canada, and the United Kingdom (through a third-party).  The Agreements required Capacity to use reasonable care in providing its 3PL services to Lashify and to follow Lashify's specifications for the packaging and shipment of its luxury brand products.

3.     In numerous and varying respects that, in the aggregate, have had a devastating effect on Lashify's business, Capacity has comprehensively failed to perform the fulfillment services contemplated under the Agreements.  As a result, Capacity is in material breach of the Agreements.  Capacity's serial failures of performance go to the very core of its fulfillment obligations and include, but are not limited to:

- mispackaging goods so that customers received incomplete orders;
- splitting orders between multiple shipments without ever communicating having done so to Lashify or to the end customer;
- using incorrect, substandard packaging;

- losing and failing to fulfill large quantities of orders;

- failing to fulfill overnight shipping; and

- double shipping thousands of orders, resulting in extra shipments totaling more than $500,000 in goods.

For example, the images below demonstrate the stark difference between a package prepared according to Lashify's specifications as required under the Agreements (left) and an example of a shipment fulfilled by Capacity received by one of Lashify's customers, who opened a customer complaint ticket (right).



4.      As confirmed by feedback from numerous Lashify customers, these were not one-off mistakes by Capacity.  This was a systematic and complete failure to fulfill Lashify's orders with the care and thought customers expect from the Lashify brand.  One particularly notable discussion on social media among

customers shows that orders fulfilled by Capacity were substandard and left

customers disappointed and concerned that Lashify was no longer providing the

luxury-brand quality and care that made these customers extremely loyal to the

Lashify brand:



One of the customers who commented on this chain noted that Capacity's careless

handling and packaging of Lashify's products were "NOT Lashify standards," and

the customer was "shocked" that her products had been carelessly "tossed in a

bag."  Lashify's customers paid for and rightly expected shipments commensurate

with the sleek, at-home-luxury experience offered by Lashify; they instead

received products haphazardly tossed in a cardboard box without care or

consideration.

5.    Capacity's systematic and complete failure to fulfill Lashify's orders

properly and at the high level that Capacity promised before Lashify signed the

Agreements has caused Lashify to lose a substantial number of customers,

including those who purchased Lashify's products on a monthly subscription basis.

Recurring subscription revenue from loyal and happy Lashify customers is critical

to Lashify's success, since it represents a reliable and substantial future stream of

revenue.  Many customers who were shocked by Capacity's substandard shipping

practices have cancelled or failed to renew their subscriptions—which means

Capacity has caused Lashify to lose not only current revenues, but a very

substantial amount of revenue for months and years to come.

6.    These pervasive and persistent failures demonstrate that Capacity was

wholly unprepared from the outset to fulfill its promises to Lashify.  Perhaps most

notably, before Lashify entered into the Agreements, Capacity touted its

technological capabilities, which it claimed would allow it to sync its computer systems with Shopify. Capacity's representation that it could sync with Shopify was critical to Lashify's decision to retain Capacity, as Shopify is the industry standard e-commerce platform used by Lashify and numerous other retailers to handle and track online sales and shipments. But Capacity was unable to properly integrate with Shopify, which caused many of the fulfillment issues described herein. Indeed, Capacity was unable to fix these problems in any reliable manner despite receiving extensive, near-daily reports from Lashify for months on the issues encountered by Lashify's customers.

7.      Capacity's failures threatened to decimate Lashify's business. Customers lodged numerous complaints with Lashify about shipping issues, and negative public perceptions of Lashify began to appear on social media. By December 2021, after months of substandard 3PL service by Capacity and false assurances by Capacity that the issues raised by Lashify would be addressed, it became clear that Capacity was unable to remediate and that any further shipments by Capacity would result in continued and severe harm to Lashify's business and reputation. In short, Capacity materially breached the Agreements repeatedly over the course of the parties' relationship. Against this backdrop, Lashify was left with no choice but to notify Capacity of its intention to terminate the Agreements and cease any further shipments from Capacity's facilities.

8.      Unable to rely on Capacity, Lashify reverted to fulfilling orders out of its own warehouse, but found that it was rapidly running out of its supply of certain products.  This is because much of Lashify's existing inventory of those best-selling products remained in Capacity's possession.  In December 2021, Lashify asked Capacity to tender its inventory of Lashify products for retrieval by Lashify as soon as practicable.  Capacity refused, further imperiling Lashify's business during the critical holiday shopping season.  Capacity took this stance despite Lashify's repeated offers to structure an interim agreement that would allow Lashify to retake possession of its inventory in exchange for valuable consideration while Capacity reserved its right to make any claims or defenses against Lashify.

9.      Capacity's representations to Lashify that it was up to the task of providing fulfillment services for a luxury brand were false, and Lashify relied on those false representations when it entered into the Agreements.  Capacity's subsequent material breach of the Agreements then caused Lashify to lose customers, goodwill, current sales, future sales, and caused irreversible damage to Lashify's reputation and brand.  Now, on notice that its stance will inflict even greater damage to Lashify's business and brand, Capacity refuses to return any of the Lashify inventory in Capacity's possession, effectively holding hostage inventory with a retail value of nearly $10.3 million and devastating Lashify's ability to stay in business.

## PARTIES

10.    Lashify, Inc. is a Delaware corporation headquartered at 11437 Chandler Blvd, North Hollywood, California 91601.

11.    Capacity LLC is a Delaware limited liability corporation headquartered at 1112 Corporate Road, North Brunswick, New Jersey 08902. Upon information and belief, the members of Capacity LLC are not citizens of Delaware or California.

12.    Capacity West LLC is a Delaware limited liability corporation headquartered at 1112 Corporate Road, North Brunswick, New Jersey 08902. Upon information and belief, the members of Capacity West LLC are not citizens of Delaware or California.

13.    Upon information and belief, Noah Sange is an individual residing in Poughkeepsie, New York.  He is Chief Commercial Officer of Capacity LLC.

## JURISDICTION AND VENUE

14.    Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. § 1332. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.  Upon information and belief, Capacity LLC's members are not citizens of the states in which Lashify is citizen.

15.    This Court has personal jurisdiction over Capacity LLC and Capacity West LLC (collectively, "Capacity") because they have their principal places of

business in this District and conduct extensive, continuous, and systematic business activities in this District, which are directly related to the subject matter of this action.

16.     This Court further has personal jurisdiction over Defendant Sange, an Officer of Capacity, based on tortious acts committed by him within the State of New Jersey, including within this District, that have given rise to this suit and/or have established at least minimum contacts with the State of New Jersey and this District such that he should reasonably and fairly anticipate being brought into court in this district and that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

17.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b). Capacity has its principal place of business in this judicial district and has a substantial presence in this district.  Further, a substantial part of the events or omissions giving rise to Lashify's claims occurred in this judicial district and a substantial part of the property that is the subject of this suit is located in this judicial district.

## STATEMENT OF FACTS

**A.**     **Lashify's Product and Business Model**

18.     Lashify is a luxury, direct-to-consumer provider of at-home artificial eyelash extension products.  Lashify revolutionized the eyelash industry by enabling customers to easily apply natural and durable eyelash extensions at home—a process which would normally take over an hour in a professional setting.  Building on its innovative eyelash technology, Lashify meticulously cultivated its brand through online presentations of eyelash applications, extensive outreach and consumer engagements, including on social media platforms, and the formulation of a customer experience that balanced luxury with convenience, all bolstered by Lashify's accessible, helpful support staff and community of influencers and informal brand ambassadors.

19.     In keeping with its brand, Lashify thoughtfully and meticulously designed every aspect of the customer experience with high-end luxury in mind.  A core part of the curated customer experience Lashify provides to its customers is the packaging, assembly, and presentation of Lashify's products to consumers. Since Lashify's inception, its products have been mailed in a distinct all-black branded package with thoughtful details, such as paper wrapping, a wax seal, and protective bedding.



20.     Lashify's business is largely based on a subscription model whereby customers make a one-time purchase of a lash application kit, and then subscribe to regular, ongoing orders of eyelash extensions based on their needs.  As a result, Lashify's customers expect a consistent, personal experience, which includes the delivery of product with Lashify's characteristic presentation.  Anything less raises justifiable concerns that the customer has received a fake or counterfeit product.  Through years of hard work, innovation, and attention to the customer experience, Lashify has built a loyal customer base, including a large number of subscribers that account for substantial recurring revenue.

21.     Lashify also holds a high standard for quality control and timely delivery of customer orders.  Customers often use Lashify's eyelash extensions to enhance their personal appearance for specific events, and thus, expect Lashify to fulfill their orders in an accurate and timely manner.  Indeed, customers often are

willing to pay a large premium for overnight delivery of their lashes.  Lashify's

clientele therefore reasonably expects fulfillment of customer orders to their

precise specifications and within the timeframe specified in their order.

22.    Lashify's online sales are conducted through a platform called

Shopify, and its fulfillment systems are monitored through a software known as

ShippingEasy.  Prior to Lashify's relationship with Capacity, fulfillment through

both of these applications was smooth and glitch-free.  With the assistance of these

systems, Lashify had seamlessly conducted its own fulfillment, packing and

delivery operations since its inception.

23.    In recent years, Lashify saw significant growth and demand for its

products.  In light of this unprecedented growth, Lashify's business had largely

outgrown its warehouse in North Hollywood, California.  In an effort to streamline

fulfillment while maintaining its very high standard of service, Lashify decided to

enter into a 3PL partnership this year, anticipating that a 3PL could decrease transit

times for Lashify's shipments (particularly to the East Coast) and reduce associated

costs to customers.

**B.    Lashify's Engagement and Onboarding with Capacity**

24.    In or around March 2021, Lashify began exploring the possibility of

engaging Capacity to provide 3PL fulfillment services.  Over the course of these

preliminary discussions, Capacity and its employees represented that they had

substantial experience and expertise servicing luxury brands and that many of Capacity's existing customers utilized Shopify—the eCommerce platform utilized by Lashify and millions of other businesses.  Indeed, Capacity's own website highlights that it performs its 3PL services with "robust systems and integrations" and "data-driven accountability."  During weekly phone calls between Lashify and Capacity throughout March and April 2021—the purpose of which was for Lashify to determine whether or not Capacity was capable of providing fulfillment services at a very high level of quality—Capacity continued to represent to Lashify that it was experienced in handling luxury brands and that it was technologically able to smoothly interface with the Shopify platform.  As explained further below, those representations were false; Capacity hugely and falsely overstated the nature and quality of its fulfillment services and capabilities.

25.    Based on Capacity's representations that it would be able to smoothly integrate with Lashify's Shopify system and fulfill Lashify's orders with the high standard of care associated with the Lashify brand, on May 4, 2021, Lashify retained Capacity for its 3PL services and entered into the Agreements.  True and accurate copies of the Agreements are attached hereto as **Exhibit A** and incorporated herein by reference.

26.    The Agreements provided that "Capacity shall exercise reasonable care of Products in providing the services detailed herein."  MSA, Section 5.  The

Agreements also contemplate that packing materials, such as "shipping box[es,] . . . be provided by Lashify," indicating that such materials must be utilized for fulfillment of Lashify's orders. SOW, Section A(3)(a)(i).

27.     Following execution of the Agreements, Lashify's onboarding process with Capacity began shortly thereafter in May 2021.  Representatives of Lashify and Capacity regularly corresponded with the goal of going live with Capacity's fulfillment services in the summer of 2021.  The parties agreed that Capacity would fulfill orders originating from certain states in the eastern United States and in Canada out of its New Brunswick, New Jersey warehouse ("Capacity East"), and Lashify would continue fulfilling orders from states in the western United States out of its North Hollywood, California warehouse.

28.     During the onboarding process, Lashify invested significant resources and undertook painstaking efforts to educate and equip Capacity to fulfill Lashify's orders in conformance with the high-end, luxury standard associated with Lashify's brand.  To that end, Lashify provided extensive guidance and instructions to Capacity on how to handle and package Lashify's products.  Those efforts included:

- An in-person visit by Lashify representatives to the Capacity East location on or around June 23, 2021, during which Lashify provided live demonstrations of the packaging and handling of Lashify product to demonstrate to the Capacity team the standard required for fulfillment of Lashify's products.

- An in-person visit by a Lashify representative to the Capacity East location on or around August 13, 2021, during which Lashify provided further live demonstrations of the packaging and handling of Lashify product in anticipation of the August 2021 go-live.

- Clear pictures, videos, and specific instructions on the different types and methods of packaging different Lashify products.

- Deployment to Capacity of custom, Lashify-branded boxes, packaging, and materials.

29.    Capacity's representatives confirmed the importance of these packaging instructions, and the parties corresponded at length on this subject.  For example, Paula Edwards, Capacity's Manager of Onboarding, confirmed her receipt of Lashify's detailed packaging instructions, set forth below, which included video instructions, for Lashify's Control Kit product.



30.    Throughout the onboarding process, Capacity representatives also confirmed their understanding in email correspondence that Capacity's services as

a 3PL included the complete and accurate "picking and packing" of Lashify's

products, and timely delivery in accordance with Lashify's customers' shipping

specifications.

31.     The onboarding process also involved the parties' collaboration on

Capacity's integration with Lashify's sales platform, Shopify, the same system that

Capacity stated was utilized by many of its existing customers.  However, in the

course of onboarding discussions between Lashify and Capacity, it became clear

that Capacity's systems were not able to directly interface with the Shopify

platform.  Contrary to its representation prior to the execution of the Agreements,

Capacity now insisted that Lashify must utilize middleware software providers—

first an application called Celigo, and later another application called Bizperanto.

Both software providers—Celigo and Bizperanto—were recommended and

introduced to Lashify by Capacity.  Capacity represented that Celigo was unable to

provide the manpower necessary to deploy for Lashify's go-live, and instead opted

to integrate with Lashify's Shopify platform using the Bizperanto application.

Lashify relied on Capacity's recommendations and expertise, and reasonably

believed that Capacity's statements that Bizperanto would bridge any integration

issues in advance of the August 2021 go-live.  Through Bizperanto, Lashify would

expect orders handled by Capacity to update on the shared system with items like

tracking numbers.

32.     The parties proceeded with their plan to divide fulfillment responsibilities by region.  To avoid double shipping, a scenario in which multiple fulfillment components mail the same order to the same customer, Capacity represented to Lashify that it would employ "blocking software," which would automatically filter orders to the responsible fulfillment site—*i.e.*, Capacity or Lashify—based on the customer's zip code.  For example, if an order was made to California, the blocking software would automatically forward the order information to Lashify's California warehouse and prevent (or "*block*") Capacity from engaging the order, although the order and its status would be visible in both parties' systems.

**C.      Capacity's Material Breach of the Agreements**

33.     From late October through mid-December 2021, Lashify received a surge of customer complaints regarding fulfillment issues caused by Capacity. These issues—each demonstrative of Capacity's inability to fulfill its contractual obligations—are grouped and categorized below.  Individually and in the aggregate, Capacity's failings had an increasingly dire effect on Lashify, jeopardizing its brand and business.  These dire effects continue to cause very substantial harm to Lashify's brand and business.

*Horrific Packaging and Handling Practices*

34.    Lashify received numerous complaints from customers about the appalling packaging and handling of their orders fulfilled by Capacity.  Based on customer feedback and commentary, Lashify learned that Capacity failed to adhere to Lashify's high-end packaging and assembly specifications required under the Agreements:  products carefully packed in a custom, all-black, Lashify-branded box, wrapped in black tissue paper or placed in black bedding, and finished with a wax seal.  Instead, Capacity packaged and shipped orders without the care and thought the Agreements required.

35.    By way of example, one customer shared images of a package of Lashify products bearing a label indicating shipment from Capacity's North Brunswick, New Jersey warehouse.  The customer's photo depicted Lashify products scattered in a plain brown cardboard box without any protective packaging.  These images show that Capacity failed to follow Lashify's explicit instructions concerning the standard of care required for fulfillment and presentation of Lashify's products:



36.    Numerous other Lashify customers reported, including on social media sites open to the public, receiving a package of Lashify products—fulfilled by Capacity—that was "NOT Lashify standards," "tossed in a box," "tossed in a bag," "weird," missing products, and containing opened products.



These customer comments confirmed that their shipments were not packaged as required under the Agreements, and customers even worried that they had received fake or counterfeit goods, or that Lashify no longer cared about the appearance and presentation of its products.

37.     In addition, the unprecedented surge in customer complaints about missing and mispackaged shipments overwhelmed Lashify's customer service team, putting further strain on customer relationships.  This was typical of Lashify's experience with Capacity—having contracted with Capacity to streamline fulfillment and free up resources, Lashify instead found itself devoting more and more customer service and executive resources to deal with problems caused by Capacity.

38.     Capacity's flagrant disregard of Lashify's very specific packing instructions is nothing short of shocking.  Lashify's entire business depends on providing its customers with the highest quality of products, packaging, and customer services.  No reputable 3PL that understood this business model and represented to its prospective client that it would provide fulfilment services at the very high level required by a premium, luxury brand would ever ship products in such a shoddy, careless, and appalling manner.

***Costly Duplicate Orders and Other Issues Caused by Capacity's Failed Technical Integrations***

39.     Capacity's persistent computer integration problems caused it to ship

***more than a half-million dollars in duplicate orders of Lashify product***.  Lashify

received customer feedback about duplicate orders in early November 2021.  The

following email is an example of one such instance:

On Mon, Dec 13, 2021, at 04:44 AM, ▇▇▇▇▇▇▇ wrote:

Hi there I noticed I was sent a duplicate of my November vip order and don't believe I was charged, I'd like to pay for it if possible!

When Lashify provided this feedback to Capacity, Capacity failed to take any

action to proactively identify why double shipping had occurred—let alone with

such alarming frequency.  Instead, Capacity repeatedly assured Lashify that double

shipments would not occur again, without providing any explanation of what was

causing the issue or what Capacity had done differently to resolve the issue.  Given

Capacity's failure to act even after Lashify notified Capacity of these serious

issues, Lashify had to hire its own technology consultants, who quickly discovered

that the blocking software Capacity had set up was faulty:  the connecting software

that Capacity deployed to integrate with Shopify was improperly set up for orders

to zip codes that started with leading zeroes—i.e., *0*1245.  Orders made from such

zip codes were automatically released to both Lashify and Capacity for fulfillment,

causing thousands of repeated double shipments.

40.     Unbeknownst to Lashify, these double shipments began occurring from the start of Capacity's fulfillment of Lashify product in August 2021. Capacity's failure to adequately integrate and connect with Shopify resulted in thousands of double shipments, costing Lashify hundreds of thousands of dollars. Moreover, despite raising the issue multiple times with Capacity, the technical reason for the double shipments was only discovered because of Lashify's diligence in addressing customer concerns and retaining technology consultants who determined that these problems were of Capacity's making.

41.     Capacity had repeatedly told Lashify that Capacity had worked with many companies using Shopify without issue and that it would do the same for Lashify.  However, Capacity's pervasive inability to handle Lashify's fulfillment needs makes clear that Capacity's statements were false.  The middleware that Capacity recommended and deployed was not properly set up and/or was otherwise unable to handle the volume of orders for Lashify products.  Moreover, Capacity's systems also failed to provide real time updates, lagging by as much as four hours, leaving Lashify with an outdated view of order fulfillment status such that Lashify had to manually run reports to manage and cancel duplicate orders to prevent Capacity from continuing to deliver further double shipments.

42.     Also around this time, Capacity—through the Capacity West LLC entity—opened a warehouse in Irwindale, California ("Capacity West") to provide

3PL services for Lashify orders destined for shipment in the western United States. With no end in sight to the issues plaguing Capacity East, Lashify had no choice but to halt fulfillment of orders at Capacity West, but not before substantial amounts of Lashify's inventory were shipped there.

43.    Capacity's double shipment problem demonstrated Capacity's failure to integrate with Shopify, Capacity's failure to address and resolve critical fulfillment issues raised by Lashify, and ultimately Capacity's material breach of and failure to perform under the Agreements.

***Lost, Missing, or Severely Delayed Deliveries***

44.    Lashify learned of extensive problems with the delivery of orders that were allocated to Capacity for fulfillment.  Some of these issues were traceable to Capacity's recommended Bizperanto middleware, which failed to propagate records of Capacity's shipments to Lashify's Shopify system.  Capacity's systems also failed to provide tracking information for thousands of orders.  Because these orders were shown to Lashify as unfulfilled for weeks, and because Capacity was unable to explain what had happened with these orders, Lashify proactively fulfilled many of the orders on its own, causing Lashify to incur unnecessary shipping and product costs.  Capacity's demonstrated unfamiliarity with industry-standard fulfillment methodologies and systems, and its complete and utter failure to fulfill Lashify's orders with the standard of care required under the Agreements,

constitute material breach of the Agreements.  A 3PL provider capable of servicing luxury brands, which Capacity claimed to be, should not have had the litany of problems Capacity exhibited over the course of the parties' relationship.

45.     By way of example, on November 5, 2021, Capacity lost track of Lashify orders that it had shipped via the carrier DHL.  Capacity explained to Lashify that the shipments were packed and labels printed, but the orders could not be located because they did not bear functional tracking numbers.  Capacity acknowledged its error regarding these shipments and agreed to compensate Lashify for the lost items, although Lashify has yet to receive this compensation. Lashify fulfilled the missing orders from its North Hollywood, California facility. Lashify subsequently learned that Capacity re-shipped the missing orders, causing yet additional double shipments.  Upon information and belief, Capacity had recovered the lost packages and mailed them out again without any communication with Lashify.

***Other Fulfillment Issues***

46.     <u>Shipments of Incomplete or Incorrect Orders.</u>  Lashify learned from its customers that they were receiving shipments fulfilled by Capacity that were missing products, had the wrong mix of products, or were otherwise incomplete. For example:

On Fri, Dec 03, 2021, at 11:18 PM, ▮▮▮▮▮▮▮▮▮@gmail.com> wrote:

Hi there, I just ordered some lashes that came in the mail today but the box is not filled with the correct items. I received 3 cartridges of F14 lashes and a bottle of bondage but I ordered fluffy FX size 12 and 14, and fluffy size 12 and 14. Can you please fix this and send me the correct lashes? I needed these for my wedding next weekend and am now worried the correct lashes will not be here on time. Can we rush the correct lashes? Please let me know thank you. Order number is: *********0543. I have attached a photo proof of what I received below, thanks.

Customers often order multiple products and multiple types of products in a single order and expect that those items will be fulfilled in a single shipment unless informed otherwise. Capacity, contrary to its contractual obligations and the specifications provided by Lashify, mailed incomplete or partial orders that contained component parts rather than complete orders without notifying Lashify or its customers. On numerous occasions, when a Lashify customer reported that their Capacity-fulfilled order was not correctly fulfilled or was otherwise incomplete, Lashify shipped the missing item(s). Lashify subsequently learned that, on some occasions, Capacity subsequently mailed the missing item(s) to the customer without notifying Lashify, creating still more double shipments.

47.    <u>System Malfunctions Showing In-Stock Items as Out-of-Stock</u>. On another occasion in or around November 2021, Lashify learned that certain items on its website were incorrectly showing as out-of-stock, resulting in lost customer sales to Lashify. When Lashify noticed that its website (which utilizes Shopify) was showing that certain in-stock items were out-of-stock, Lashify raised the issue with Capacity. On information and belief, the technical integration issues that Capacity repeatedly faced with Shopify caused the inventory discrepancy, and

Lashify had to manually correct the inventory levels so that its website reflected the products as in-stock.  This issue was yet another oversight caused by Capacity's failure to adequately perform under the Agreements.

**D.    Capacity Failed to Address the Concerns Raised by Lashify, and Was Demonstrably Incapable of Full Performance Under the Agreements**

48.    On multiple occasions, Lashify alerted Capacity to the numerous fulfillment issues outlined herein, but Capacity consistently demonstrated its inability to meaningfully address Lashify's concerns.  For instance, in or around November 2021, Lashify alerted Capacity to the customer complaints that Lashify was receiving concerning missing items, incorrect orders, and substandard packaging.  Capacity's failure to proactively address technical integration issues and its general lack of care and attention to Lashify's concerns made clear that Capacity was wholly incapable of satisfying its obligations under the Agreements—or was intentionally unwilling to do so.  Indeed, in one instance when confronted with complaints and tickets from Lashify customers, Capacity responded by falsely suggesting the customer complaints were untruthful.

49.    Similarly, after Lashify made Capacity aware of the occurrence of double shipments of Lashify orders, Lashify provided Capacity multiple opportunities to identify and correct the technical issues causing the double shipments.  On several occasions in November and December 2021, Capacity claimed to have fixed the integration issues with Bizperanto, but the same or

similar issues repeatedly resurfaced.  The problems were so pervasive and unremedied that Lashify is left to conclude that the serial double shipments and divisions of single orders into multiple shipments meant that Capacity, which was compensated per shipment, was intentionally boosting the number of shipments in an artificial manner to maximize its profits.

50.     Capacity has conceded that the litany of problems set forth herein was caused by Capacity.  On December 10, 2021, Lashify's founder and CEO Sahara Lotti emailed Capacity to emphasize the serious damage that Capacity's conduct had caused to Lashify.  On December 14, 2021, Defendant Sange responded by acknowledging Capacity's responsibility for the fulfillment problems. "I wanted to sincerely apologize for what has happened.  You put your faith in us and in Syncware/bizparento and it seems something went horribly wrong in the process of implementing your business.  I am seeking to better understand what happened and correct it immediately."  But at that point, the damage was already done, and Capacity had squandered its many opportunities to cure performance under the Agreements.

51.     In short, Capacity was demonstrably incapable of curing the numerous fulfillment issues raised by Lashify, leaving Lashify no choice but to terminate the Agreements.  On December 11, 2021, Lashify cut off Capacity's ability to connect with Lashify's Shopify platform.

**E.      Capacity's Refusal to Return Lashify's Inventory Following Termination**

52.      Capacity is presently in possession of a significant portion of Lashify's on-hand inventory, which has a retail value in excess of $10 million. Lashify has repeatedly explained to Capacity that it has exhausted its own supply of certain best-selling products and is running dangerously low on others. Capacity has refused nevertheless to tender Lashify's inventory, threatening to cause further harm to Lashify's business and brand.

53.      As of the end of December 2021, numerous items that Lashify needs to fulfill customer orders are out of stock, or will soon be out of stock, at Lashify's North Hollywood, California warehouse.  These critical items are currently in Capacity's possession.  The following is a non-exhaustive list of items that, as of the filing date of this Complaint, Lashify has run out of or will soon run out of if Capacity does not return Lashify's inventory.  This list also shows the current amounts in Capacity's possession:

| Item Description | Inventory Quantities | |
|---|---|---|
| | Lashify | Capacity |
| Lashify Small Luxe Mailer Boxes (LMB01) | 0 | 66678 |
| Lashify Medium Luxe Mailer Boxes (LMB02) | 1513 | 26400 |
| LED Infinity Mirror (LEDM02) | -48 | 578 |
| Magic Cleansing Puff (BCP01) | 25 | 3000 |
| Charcoal Cotton Swabs 50 Pack (CS001) | 27 | 3257 |
| Glass (GS03) | -160 | 5378 |
| Core Amplify Gossamer® Lashes 18mm (GA18) | -139 | 1,750 |

| Item Description | Inventory Quantities | |
| --- | --- | --- |
| | Lashify | Capacity |
| Core Curl Gossamer® Lashes 8mm (GC08) | 167 | 1,244 |
| Core Curl Gossamer® Lashes 12mm (GC12) | -2,111 | 27,391 |
| Volume Extreme Gossamer® Lashes 14mm (GE14) | -449 | 7,506 |
| Volume Starburst™ Gossamer® Lashes 14mm (GSB14) | -139 | 13,117 |

54.    The return of these items is critical to Lashify's ability to fulfill customer orders.  For instance, Lashify's North Hollywood warehouse is currently out of Lashify-branded mailer boxes (LMB01 and LMB02), without which Lashify cannot ship and fulfill customer orders.  Lashify's branded mailers must be specially printed and manufactured, and replacement stock cannot be readily obtained.  Capacity currently has in its possession tens of thousands of these mailer boxes sitting on pallets that can quickly be prepared for delivery to Lashify.  Yet Capacity has refused to return any of Lashify's inventory, effectively crippling Lashify's ability to fulfill orders that are backlogged due to Capacity's own conduct in breach of the Agreements.

55.    Furthermore, as of December 29, 2021, Lashify's projected inventory in its North Hollywood, California warehouse will have negative inventory for at least twelve (12) best-selling items in January 2022  The following is a list of items that Lashify is forecasted to run out of in January if Capacity does not return Lashify's inventory, and the current amounts in Capacity's possession:

| Item Description | Inventory Quantities | |
|---|---|---|
| | Lashify | Capacity |
| Core Amplify Gossamer® Lashes 8mm (GA08) | -615 | 3,317 |
| Core Amplify Gossamer® Lashes 10mm (GA10) | -3,568 | 5,923 |
| Core Amplify Gossamer® Lashes 12mm (GA12) | -380 | 9,442 |
| Core Amplify Gossamer® Lashes 18mm (GA18) | -425 | 1,750 |
| Core Bold Gossamer® Lashes 10mm (GB10) | -2,034 | 14,348 |
| Core Curl Gossamer® Lashes 8mm (GC08) | -2,012 | 1,244 |
| Core Curl Gossamer® Lashes 12mm (GC12) | -18,275 | 27,391 |
| Volume Drama Gossamer® Lashes 10mm (GD10) | -385 | 929 |
| Volume Extreme Gossamer® Lashes 14mm (GE14) | -2,036 | 7,506 |
| Volume Starburst™ Gossamer® Lashes 14mm (GSB14) | -4,088 | 13,117 |
| Volume Starburst™ Gossamer® Lashes 16mm (GSB16) | -2,544 | 11,337 |
| Volume Starburst™ Gossamer® Lashes 18mm (GSB18) | -376 | 6,283 |

56.    Without these best-selling items, Lashify will be unable to fulfill customer subscriber orders and will run the risk of subscribers pausing or canceling their subscriptions, which will have a severe negative impact on Lashify's business and revenues.  Capacity has substantial stock of these best-selling items at its warehouse, and its continued refusal to return Lashify's inventory is unjustified and will be devasting to Lashify's business in the coming month.

57.    Lashify understands and believes that some of the critical inventory identified herein is readily available for pickup from the Capacity West location. Capacity West only recently received substantial inventory from Lashify in November and December 2021.  That inventory was never shipped to customers because Lashify declined to go live with Capacity West due to the various ongoing

fulfillment issues Capacity faced as described above.  On information and belief, much if not all of the inventory in the Capacity West warehouse remains on pallets and is available for immediate delivery to Lashify.

58.    On December 13, 2021, Lashify sought the return of its inventory in Capacity's possession as soon as possible in light of Capacity's material breach of the Agreements.  Defendants responded to Lashify seeking to continue the business relationship, and failed to provide a date by which Lashify could retrieve its inventory.

59.    On December 17, 2021, Lashify corresponded further by email with Humberto Espiritu, Client Account Manager at the Capacity West warehouse seeking the return of Lashify's inventory.  That same day, Mr. Espiritu confirmed that Capacity West would be able to prepare the inventory for return to Lashify on the next business day, December 20, 2021 in email correspondence where he stated that Capacity West would be able to provide a pallet count, weights, and dimensions, and "we can schedule the pick-up for Monday 12/20" of certain items of Lashify's inventory.  On December 20, 2021, Lashify contacted Mr. Espiritu seeking to pick up the Lashify inventory stored at Capacity West as discussed by email.

60.    To date, Lashify has not heard back from Capacity West or Capacity East concerning the return of Lashify's inventory.

**F.    Capacity's Course of Conduct Has Caused Severe Harm to Lashify's Business and Brand**

61.    Capacity's serial failures have caused serious damage to Lashify. Capacity's failure to fulfill orders in keeping with Lashify's high standards has damaged Lashify's business.  Because Lashify operates on a subscription model, customers expect that Lashify will provide a consistent, high-quality customer experience with every delivery.  Capacity's failure to fulfill subscribing customers' regular orders with the level of care and thought expected from Lashify has undoubtedly caused customers to cancel or pause their subscriptions, causing severe financial damage to Lashify's business in the form of lost reoccurring revenue.

62.    The loss of subscription customers is particularly harmful to Lashify's business because these customers must make a minimum monthly purchase, which is $40.  Further, many subscribers purchase substantially more than $40 of products per month, and do so month after month.  Accordingly, the loss of subscribers due to Capacity's failures and its refusal to return Lashify's inventory will not only negatively impact current revenues, but also have a substantially negative impact on subscriber revenues for months and even years to come.  The loss of reoccurring revenues from subscribers has a long-term negative impact on Lashify's sales and associated revenues.

63.    Given how valuable reoccurring revenue is, Lashify has incurred substantial expenses over time to acquire subscribers.  The loss of subscriber

customers not only results in the loss of reoccurring revenues, but also means that Lashify has lost the benefits from the expenses it incurred acquiring such customers.

64.     The problem of lost subscribers is exacerbated by Capacity's refusal to return Lashify's inventory, which severely cripples Lashify's ability to fulfill customer orders on a go-forward basis.  In particular, as described above, Lashify has already run out of or is close to running out of its signature mailer boxes, without which Lashify cannot fulfill certain customer orders.  Moreover, Lashify expects that in the next month it will sell out of additional best-selling items and, without the return of inventory in Capacity's possession, Lashify will almost certainly lose a substantial number of subscribers and orders.

65.     Moreover, Lashify is heavily dependent on word-of-mouth on social media, so frustrations voiced by customers who experienced fulfillment problems caused by Capacity can have a sizeable impact on the broader public perception of Lashify and its brand.  By fulfilling orders without following Lashify's specifications for packaging and presentation, double shipping orders, and generally failing to satisfy the standard of care required under the Agreements, Capacity's material breach the Agreements has caused and will continue to cause severe financial damage to Lashify.

66.     Capacity's conduct and failure to adequately perform under the Agreements has also caused Lashify severe financial damage in the form of lost

product and unnecessary shipping fees.  Lashify has incurred significant losses due
to double-shipped orders caused by Capacity, missing or incomplete orders that
Lashify needed to resend to customers, and additional shipping costs incurred due
to Capacity's failure to accurately fulfill customer orders.

67.     Capacity's conduct has also caused significant loss in the form of lost
customer orders.  For instance, Lashify lost customer orders when Capacity's
systems inadvertently marked in-stock items as out-of-stock on Lashify's website.
Moreover, on account of Capacity's woeful performance, Lashify was forced to
pause all fulfillment operations—at one of the busiest times of the year—before it
could resume fulfilling orders directly.

68.     Lashify continues to be damaged by Capacity's conduct in light of
Capacity's refusal to return Lashify's inventory.  A substantial amount of Lashify's
inventory is currently in Capacity's possession, and Lashify is in critical need of
that inventory in order to properly fulfill customer orders.  Due to the late
December holidays, getting additional inventory of Lashify's products air-shipped
to the United States on a rush basis from Lashify's manufacturers would come at
substantially high costs.  In addition, orders of new inventory will take months for
manufacturers to fulfill and deliver, particularly in light of global supply chain
delays.  Lashify will continue to be harmed if Capacity does not immediately
return Lashify's inventory.

## FIRST CAUSE OF ACTION
## (BREACH OF CONTRACT AS AGAINST DEFENDANT CAPACITY)

69.     Lashify hereby incorporates each and every allegation contained in the previous Paragraphs as if each was fully set forth at length herein.

70.     Lashify and Capacity entered into valid and binding Agreements in May 2021.

71.     Capacity breached the terms of the Agreements by failing to uphold its obligations.  As alleged herein, these failures include, but are not limited to:

a.     Capacity shipped Lashify items without the characteristic packaging required by the Agreements.  Instead of using Lashify's tailored black packaging, orders were placed in regular cardboard boxes with little protection or care.

b.     Capacity double-shipped thousands of orders due to its failure to adequately integrate and connect with Lashify's e-commerce platform, Shopify, causing Lashify hundreds of thousands of dollars in losses.

c.     Capacity failed to properly implement its systems to integrate competently and smoothly with Lashify's e-commerce platform to fulfill customer orders.

d.     Capacity mailed incomplete packages to customers with missing items. Upon receiving customer complaints, Lashify would send out the purportedly missing item. At some later time, Capacity would then mail

out the "missing" item to the same customer. As explained above, Lashify specifically trained Capacity how to package products which entailed only mailing Lashify items as a complete package, rather than mailing out component parts.

       e.     Capacity lost a large swath of orders with DHL, and Capacity agreed to compensate Lashify for the lost items, but failed to do so. After Lashify eventually fulfilled the missing orders for customers, the items became double-shipped when they suddenly reappeared on Lashify's fulfillment system. Upon information and belief, Capacity recovered the lost packages and mailed them out without any communication with Lashify.

72.    Lashify has performed all obligations owed to Capacity, except those obligations Lashify was prevented or excused from performing as a result of Capacity's material breaches.

73.    Capacity's failures to comply with its contractual obligations have directly caused significant damages to Lashify, including in the form of loss of inventory, sales, shipping costs and fees, reputation and good will among its customers, and other general and specific damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AS AGAINST DEFENDANT CAPACITY)

74.     Lashify hereby incorporates each and every allegation contained in the previous Paragraphs as if each was fully set forth at length herein.

75.     In every contract between parties, there is an implied covenant imposed upon both parties to deal in good faith and fairly so as to not frustrate the other party's expectation of benefits under the contract.

76.     By such conduct as set forth above, Lashify has breached the implied covenant of good faith and fair dealing of the Agreements.

77.     As a direct result of Capacity's breaches, Lashify has been, and will continue to be, harmed.

## THIRD CAUSE OF ACTION
### (COMMON LAW FRAUD AS AGAINST DEFENDANTS CAPACITY AND NOAH SANGE)

78.     Lashify hereby incorporates each and every allegation contained in the previous Paragraphs as if each was fully set forth at length herein.

79.     Capacity and Defendant Sange materially misrepresented key capabilities in its services, with knowledge of falsity and with the intent to induce Lashify's reliance.

80.     As alleged above, Lashify was led to believe that Capacity had the ability to integrate with Lashify's e-commerce platform and to fulfill Lashify's

large volume of orders in keeping with Lashify's high standards. However, the software used by Capacity was not equipped to handle Lashify's orders. As alleged above, the technical integration issues caused by Capacity resulted in horrific packaging and handling, double shipments, delayed or missing deliveries, and a litany of other fulfillment issues.

81.    Additionally, Capacity and Defendant Sange led Lashify to believe that Capacity was familiar with the Shopify platform and had worked with companies on Shopify without problems.

82.    As alleged above, Capacity was completely unprepared to integrate its systems with the Shopify platform, which failure contradicted Capacity's statements assuring Lashify of their ability to handle fulfillment of Lashify's orders.

83.    Capacity and Defendant Sange's misstatements, misrepresentations, acts, and omissions were calculated to convince Lashify to enter into the Agreements. Further, after the Agreements were signed, Capacity and Defendant Sange continued to engage in misstatements, misrepresentations, acts, and omissions calculated to conceal the fraud that Capacity and Defendant Sange engaged in to induce Lashify to enter into the Agreements. and continue conducting business under the Agreements.

84.    Lashify reasonably relied on those misrepresentations when it entered into the Agreements.

40

85.     As a result of these misrepresentations, Lashify has suffered

significant damages.

### FOURTH CAUSE OF ACTION
### (FRAUD IN INDUCEMENT AS AGAINST
### DEFENDANTS CAPACITY AND NOAH SANGE)

86.     Lashify hereby incorporates each and every allegation contained in

the previous Paragraphs as if each was fully set forth at length herein.

87.     Capacity and Defendant Sange are guilty of fraud in inducing Lashify

to execute the Agreements and fully perform Capacity's obligations thereunder,

knowing that Capacity did not have the capabilities to service Lashify pursuant to

Capacity's obligations.

88.     In doing the acts herein alleged, Capacity and Defendant Sange

knowingly, willfully, maliciously, and fraudulently deprived Lashify of the benefit

of its bargain under the Agreements, and committed further acts of

malicious, fraudulent, and deceptive practices in the execution of the Agreements.

89.     As a direct and proximate result of such fraudulent, malicious, and

deceptive conduct committed by Capacity and Defendant Sange against Lashify,

Lashify has been severely harmed by Capacity's and Defendant Sange's wrongful,

malicious, fraudulent, and deceitful conduct.

90.     By reason of the foregoing, Lashify has suffered damages in an

amount to be shown according to proof at the time of trial.

91.    In acting as hereinbefore alleged, Capacity acted intentionally, maliciously, fraudulently, willfully, knowingly, and oppressively and with the intent to vex, harass and injure plaintiff, and as such, with the further deliberate intent to steal Lashify's share of revenue due under the Agreement, to its own benefit and unjust enrichment.  By reason thereof, Lashify is entitled to recover exemplary and punitive damages in a sum sufficient to punish and make an example of said defendants, all in an amount according to proof at the time of trial.

## FIFTH CAUSE OF ACTION
### (CONVERSION AS AGAINST DEFENDANT CAPACITY)

92.    Lashify hereby incorporates each and every allegation contained in the previous Paragraphs as if each was fully set forth at length herein.

93.    At all times herein mentioned, Lashify was an owner entitled to possession and benefits of its products and inventory in Capacity's warehouses.

94.    Capacity has, as more particularly alleged above, converted to its own use, Lashify's inventory.

95.    By reason of the foregoing, Lashify has suffered damages in an amount to be shown according to proof at the time of trial, but which amount plaintiff is informed and believes, and upon that basis alleges, exceeds $10 million.

96.    In acting as previously alleged, Capacity acted intentionally, maliciously, fraudulently, willfully, knowingly, and oppressively and with the intent to vex, harass and injure Lashify, and as such, conspired to vex, harass, and

injure Lashify and with the further deliberate intent to deprive Lashify of its property, to Capacity's own benefit and unjust enrichment.  By reason thereof, Lashify is entitled to recover exemplary and punitive damages in a sum sufficient to punish and make an example of said defendant, all in an amount according to proof at the time of trial.

## SIXTH CAUSE OF ACTION
## (UNJUST ENRICHMENT AS AGAINST DEFENDANT CAPACITY)

97.    Lashify hereby incorporates each and every allegation contained in the previous Paragraphs as if each was fully set forth at length herein.

98.    Capacity intentionally deprived Lashify of its legally protected property interest in its product inventory without justification, in both retaining the inventory and improperly split-shipping and double shipping thousands of orders.

99.    Capacity has benefited from the intentional deprivation from Lashify of over $10 million in inventory.

100.   Capacity also benefitted from Lashify's payment of additional fees and costs associated with each improperly split and double-shipped item fulfilled by Capacity.

101.   The retention of such benefits by Capacity without payment for the same would be unjust and unlawful.

102.   As a result of Capacity's unjust enrichment, Lashify has suffered substantial damages.

## **PRAYER FOR RELIEF**

**Wherefore**, Lashify prays for judgment against Defendants as follows:

A.  Compensatory damages in an amount to be determined at trial, with interest.

B.  A mandatory preliminary injunction and permanent injunction, enjoining Defendants to prepare, stage, and return Lashify's inventory in Capacity's possession for retrieval by Lashify at Defendants' warehouses within five (5) business days.  Such mandatory preliminary injunction should cause Capacity to tender Lashify's custom packaging and boxes as part of the return of Lashify's inventory on the first business day.

C.  Costs and reasonable attorneys' fees, as permitted by law; and

D.  Such other and further relief as the Court deems just and reasonable.

## **DEMAND FOR JURY TRIAL**

Lashify requests a trial by jury on all issues properly triable by jury.

Dated: December 31, 2021

Respectfully submitted,

LASHIFY, INC.

By its attorneys,

By:   */s/ David W. Feder*

David W. Feder
**FENWICK & WEST LLP**
902 Broadway, Suite 14
New York, NY 10010-6035
Telephone: 212-430-2600

Jay L. Pomerantz *
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone: 650-988-8500

* *pro hac vice* forthcoming

*Attorneys for Plaintiff*
*Lashify, Inc.*